WO                    IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA


GABRIEL OGBONNAYA,               )
                                 )
                    Plaintiff,   )
                                 )
          vs.                    )
                                 )
CITY OF MESA, et al.,            )
                                 )        No. 2:14-cv-1544-HRH
                    Defendants.  )
_____)


O R D E R

Motion for Judgment on the Pleadings;
Motion to Amend

Defendants move for judgment on the pleadings.[1]  This motion is opposed by

plaintiff,[2] and plaintiff moves for leave to file an amended complaint.[3]  Plaintiff's motion

for leave to amend is opposed.[4]  Oral argument has been requested on the motion for

judgment on the pleadings but is not deemed necessary.

_____

[1]Docket No. 6.

[2]Docket No. 15.

[3]Docket No. 23.

[4]Docket No. 24.

-1-

<u>Background</u>

Plaintiff is Gabriel Ogbonnaya, M.D.  Defendants are the City of Mesa; Frank Milstead, the Mesa Chief of Police; Detective Laurie Kessler, Detective Rick Scott, and Detective Rick Berry.[5]  Plaintiff has sued the individual defendants in both their official and individual capacities.

Plaintiff alleges that "[o]n June 9, 2010," he "was arrested by the Mesa Police for unspecified acts of sexual misconduct involving three of his female patients."[6]  Plaintiff alleges that "[o]n June 10, 2010," he "was released from custody on his own recognizance."[7]

Plaintiff alleges that "[i]mmediately after his arrest, ... the Mesa Police Department sent out a press release listing the charges against [him], quoting the 'victims' verbatim and ... asking other women to come forward if they had a similar report."[8]  On June 25, 2010, he "was again arrested by the Mesa Police on charges of sexual assault and sexual abuse of a total of nine women."[9]  Plaintiff alleges that he "was released on bond after he used his

---

[5]Plaintiff's complaint names "Rick Berry" as a defendant.  Berry's first name is actually Steven.  Plaintiff has corrected this problem in his proposed amended complaint.

[6]Complaint [etc.] at 6, ¶ 23, attached to Notice of Removal, Docket No. 1.

[7]<u>Id.</u> at ¶ 24.

[8]<u>Id.</u> at ¶ 25.

[9]<u>Id.</u> at 7, ¶ 28.

house as financial security, but [he] had to wear an ankle bracelet with 24/7 monitoring restrict[ing] his movement and travel, and be supervised by pretrial services."[10]

Plaintiff alleges that his medical license was suspended in July 2010.[11] Plaintiff alleges that the suspension was "based in large measure on the media press releases from the Mesa Police Department and information provided to the Medical Board by the Mesa Police Department."[12]

Plaintiff alleges that the Mesa Police Department's investigation into the allegations of sexual misconduct was deficient. Plaintiff alleges that defendant Kessler coached the alleged victims during interviews and that defendant Scott "cajoled a woman to become a complainant because the police needed a 'credible' victim."[13] Plaintiff alleges that the Mesa Police Department did not ask to review his medical records in order to verify the dates and locations the alleged victims had seen plaintiff.[14] Plaintiff alleges that Mesa Police Department ignored or disregarded interviews with family members of the alleged

---

[10]Id.

[11]Id. at ¶ 29.

[12]Id.

[13]Id. at 6-7, ¶¶ 26-27.

[14]Id. at 7, ¶ 30.

victims who "either denied or did not corroborate what the women had reported."[15] Plaintiff alleges that the Mesa Police Department "never asked to interview [his] office staff to ascertain basic facts that the women relayed[.]"[16] And, plaintiff alleges that defendant Kessler "refused to speak to [him] and would not interview him, despite the fact that [plaintiff] asked to be interviewed."[17]

The case against plaintiff was presented to a Grand Jury.[18] Plaintiff alleges that Kessler testified at the Grand Jury and that he asked to testify but the Deputy County Attorney who presented the case to the Grand Jury refused his request.[19]

Plaintiff's case went to trial on January 9, 2013 and on February 27, 2013, he was found "not guilty on all counts."[20]

On February 26, 2014, plaintiff commenced this action. In his complaint, plaintiff asserts six causes of action. In his first claim for relief, plaintiff asserts § 1983 claims for

---

[15]Id. at 7-8, ¶ 31.

[16]Id. at 8, ¶ 32.

[17]Id. at ¶ 33.

[18]Id. at ¶ 34.

[19]Id. at ¶¶ 34-35.

[20]Id. at ¶ 36.

wrongful arrest, malicious prosecution, and denial of a fair trial against all defendants.[21] In his second claim for relief, plaintiff asserts a § 1983 claim against the City and Milstead for failure to train and supervise. Plaintiff's third claim for relief is a state-law negligence claim against all defendants. Plaintiff's fourth claim for relief is a state-law malicious prosecution claim against the individual defendants. Plaintiff's fifth claim for relief is a state-law abuse of process claim against the individual defendants. Plaintiff's sixth claim for relief is an intentional infliction of emotional distress claim against all defendants. Plaintiff seeks compensatory damages against all defendants and punitive damages against the individual defendants.

On August 11, 2014, defendants moved for judgment on the pleadings on all of plaintiff's claims. After briefing on the motion was complete, plaintiff asked the court to defer ruling on the motion until he had filed a motion to amend his complaint.[22] The court denied plaintiff's motion to defer on November 17, 2014 because "it [was] not at all clear ... that deferring a ruling on defendants' motion for judgment on the pleadings w[ould] be the most efficient way to address the issues raised by the motion for judgment on the

_____

[21]Although plaintiff's complaint was not a model of clarity as to what actual claims were being asserted in his first claim for relief, in his opposition to the motion for judgment on the pleadings, plaintiff clarifies that his first claim for relief asserts these three § 1983 claims. Plaintiff's Response to Defendants' Motion for Judgment on the Pleadings at 2, Docket No. 15.

[22]Docket No. 19.

pleadings."[23]  Nonetheless, on November 19, 2014, plaintiff filed a motion for leave to file a first amended complaint.

Plaintiff's proposed amended complaint contains six claims.  Claim One is a § 1983 Fourth Amendment claim against Kessler, Scott, and Berry based on allegations that they fabricated probable cause.  Claim Two contains a § 1983 deliberate-fabrication-of-evidence claim and a § 1983 malicious prosecution claim against Kessler and Scott.  Claim Three is a § 1983 claim against the City and Milstead based on allegations about the police department's official policies and practices for the investigation of "sex crimes."  Claim Four is a § 1983 failure to train claim against the City and Milstead.  Claim Five is a gross negligence claim against the individual defendants.  Claim Six is a state-law malicious prosecution claim against Kessler, Scott, and Berry.[24]

Defendants filed a perfunctory response to plaintiff's motion to amend in which they argue that the motion is premature and that amendment would be futile.  But, plaintiff insists that the proposed amended complaint corrects many of the issues raised in defendants' motion for judgment on the pleadings and that amendment would not be futile.

---

[23]Docket No. 22.

[24]Plaintiff contends that his proposed amended complaint only contains five claims for relief but there are plainly six claims being asserted.

Discussion

" Under Federal Rule of Civil Procedure 12(c), '[a]fter the pleadings are closed—but early enough not to delay trial—a party may move for judgment on the pleadings.'" Chavez v. United States, 683 F.3d 1102, 1108 (9th Cir. 2012). "Analysis under Rule 12(c) is 'substantially identical' to analysis under Rule 12(b)(6) because, under both rules, 'a court must determine whether the facts alleged in the complaint, taken as true, entitle the plaintiff to a legal remedy.'" Id. (quoting Brooks v. Dunlop Mfg. Inc., No. 10–04341 CRB, 2011 WL 6140912, at *3 (N.D. Cal. Dec. 9, 2011)).  "The [c]ourt inquires whether the complaint at issue contains 'sufficient factual matter, accepted as true, to state a claim of relief that is plausible on its face.'" Harris v. Cnty. of Orange, 682 F.3d 1126, 1131 (9th Cir. 2012) (quoting Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009)). "'Judgment on the pleadings is properly granted when [, accepting all factual allegations in the complaint as true,] there is no issue of material fact in dispute, and the moving party is entitled to judgment as a matter of law.'" Chavez, 683 F.3d at 1108 (quoting Fleming v. Pickard, 581 F.3d 922, 925 (9th Cir. 2009)).

"Leave to amend a party's pleading pursuant to Rule 15(a) of the Federal Rules of Civil Procedure  should [be] freely give[n] ... when justice so requires and generally shall be denied only upon showing of bad faith, undue delay, futility, or undue prejudice to the

opposing party[.]" <u>Chudacoff v. Univ. Medical Ctr. of S. Nev.</u>, 649 F.3d 1143, 1152 (9th Cir. 2011) (internal citations omitted).

<u>First Claim for Relief (§ 1983 wrongful arrest, malicious prosecution, and denial of fair trial claims)</u>

Plaintiff's § 1983 false arrest, malicious prosecution, and denial of a fair trial claims against the City are dismissed. "[T]here is no respondeat superior liability under § 1983." <u>Chudacoff</u>, 649 F.3d at 1151. These § 1983 claims are based on the actions of Kessler and Scott. The City is not liable for their actions simply because the City employs them. Amendment of these claims would be futile as plaintiff apparently realized as he did not include these claims in his proposed amended complaint.

To the extent that plaintiff's § 1983 claims in his first claim for relief are asserted against the individual defendants in their official capacities, these claims are also dismissed. "An official capacity suit against a municipal officer is equivalent to a suit against the entity." <u>Ctr. for Bio–Ethical Reform, Inc. v. Los Angeles County Sheriff</u>, 533 F.3d 780, 799 (9th Cir. 2008). "[W]hen both an officer and the local government entity are named in a lawsuit and the officer is named in official capacity only, the officer is a redundant defendant and may be dismissed." <u>Luke v. Abbott</u>, 954 F. Supp. 202, 203 (C.D. Cal. 1997). Amendment of these claims would be futile as plaintiff apparently realized because in his proposed amended complaint, the individual defendants are only sued in their individual capacities.

Plaintiff's § 1983 false arrest, malicious prosecution, and denial of a fair trial claims against Milstead in his individual capacity are also dismissed. "A defendant may be held liable as a supervisor under § 1983 'if there exists either (1) his or her personal involvement in the constitutional deprivation, or (2) a sufficient causal connection between the supervisor's wrongful conduct and the constitutional violation.'" Starr v. Baca, 652 F.3d 1202, 1207 (9th Cir. 2011) (quoting Hansen v. Black, 885 F.2d 642, 646 (9th Cir. 1989)). Plaintiff has alleged no facts that suggest that Milstead was personally involved in the alleged deprivations of constitutional rights. Amendment as to this claim would have not been futile because it is possible that plaintiff could have alleged that Milstead was personally involved in the alleged deprivation of constitutional rights asserted in claim one. However, in his proposed amendment complaint, plaintiff makes no such allegations and no longer asserts § 1983 claims of false arrest, denial of a fair trial, or malicious prosecution against Milstead. Thus, leave to amend as to these claims against Milstead is denied.

Plaintiff's § 1983 claims asserted in his first claim for relief against Berry in his individual capacity are also dismissed. "Liability under section 1983 arises only upon a showing of personal participation by the defendant." Taylor v. List, 880 F.2d 1040, 1045 (9th Cir. 1989). Plaintiff has alleged no facts that suggest that Berry was personally involved in the alleged deprivation of constitutional rights. Amendment as to these claims against Berry would not be futile as it is possible that plaintiff could allege that Berry was

personally involved.  And, in his proposed amendment complaint, plaintiff has included factual allegations about Berry's personal involvement and has alleged a § 1983 Fourth Amendment claim against Berry based on allegations that he fabricated probable cause.

Turning then to plaintiff's § 1983 false arrest claim against Scott and Kessler in their individual capacities, defendants argue that this claim should be dismissed because it is barred by the statute of limitations.  "It is well-established that claims brought under § 1983 borrow the forum state's statute of limitations for personal injury claims[.]"  Action Apt. Ass'n, Inc. v. Santa Monica Rent Control Bd., 509 F.3d 1020, 1026 (9th Cir. 2007).  "The applicable statute of limitations for personal injury claims in Arizona is two years."  Cholla Ready Mix, Inc. v. Civish, 382 F.3d 969, 974 (9th Cir. 2004).

"'The statute of limitations for a section 1983 claim seeking damages for false arrest in violation of the Fourth Amendment ... begins to run at the time the claimant becomes detained pursuant to legal process.'"  Wilson v. Yavapai County Sheriff's Office, Case No. CV 11–8199–PCT–JAT, 2012 WL 1067959, at *5 (D. Ariz. March 29, 2012) (quoting Wallace v. Kato, 549 U.S. 384, 397 (2007)).  Plaintiff alleges that he was arrested without probable cause on June 9 and June 25, 2010.  But, because plaintiff did not file his complaint until February 2014, long after the two-year limitations period had run, defendants argue that plaintiff's § 1983 false arrest claim is time barred.

Plaintiff argues, however, that his claim for false arrest is timely because he remained "imprisoned" until February 28, 2013, the date on which he was released from pre-trial supervision. Plaintiff argues that the limitations period for a false arrest/false imprisonment claim does not begin to run until the imprisonment in question ends. In support of his argument, plaintiff cites to Panzica v. Corrections Corp. of America, 559 Fed. Appx. 461 (6th Cir. March 17, 2014). There, the Sixth Circuit observed that "[t]he Supreme Court has recognized ... that the accrual date for a false imprisonment claim is subject to a 'distinctive rule,' because a 'victim may not be able to sue while he is imprisoned.'" Id. at 463 (quoting Wallace, 549 U.S. at 389). "Acknowledging this, in Wallace, the Court held that the statute of limitations 'begin[s] to run against an action for false imprisonment when the alleged false imprisonment ends.'" Id. (quoting Wallace, 549 U.S. at 389).

Contrary to what the Sixth Circuit stated in Panzica, the Supreme Court in Wallace did not hold that the statute of limitations for a false imprisonment claim begins to run when the false imprisonment ends. Rather, the holding in Wallace was "that the statute of limitations upon a § 1983 claim seeking damages for a false arrest in violation of the Fourth Amendment, where the arrest is followed by criminal proceedings, begins to run at the time the claimant becomes detained pursuant to legal process." Wallace, 549 U.S. at 397. That holding would suggest that plaintiff's § 1983 false arrest claim, which is based on allegations that he was arrested without probable cause, is time barred.

Plaintiff, however, seems to be arguing that his false arrest/false imprisonment claim is not based only on the Fourth Amendment, but also on the Fourteenth Amendment.  In Mondragón v. Thompson, 519 F.3d 1078, 1080 (10th Cir. 2008), Mondragón "claim[ed] that Officer James Thompson forged an arrest warrant and illegally imprisoned him in New Mexico for three months."  Mondragón filed suit against Thompson and Thompson's supervisor exactly three years after he was released from custody.  Id.  Mondragón asserted a § 1983 claim "alleging 'wrongful detention' that 'was unlawful, unnecessary, in excess of all authority granted or delegated to the Defendants, and effected a deprivation upon the Plaintiff of rights and privileges secured to him by the Constitution and laws of the United States of America.'"  Id. at 1081.  The defendants argued that Mondragón's claim was not timely even though it had been filed within the three-year limitation period that applied to § 1983 claims in New Mexico.  Id.  The Tenth Circuit explained that it

> has held that a plaintiff who claims that the government has unconstitutionally imprisoned him has at least two potential constitutional claims. The initial seizure is governed by the Fourth Amendment, but at some point after arrest, and certainly by the time of trial, constitutional analysis shifts to the Due Process Clause.  If he has been imprisoned without legal process he has a claim under the Fourth Amendment analogous to a tort claim for false arrest or false imprisonment.  If he has been imprisoned pursuant to legal but wrongful process, he has a claim under the procedural component of the Fourteenth Amendment's Due Process Clause analogous to a tort claim for malicious prosecution.

Id. at 1082 (internal citations omitted).  In other words, the Tenth Circuit  "permits due process claims for wrongful imprisonment after the wrongful institution of legal process."  Id. at 1083.  The statute of limitations for such a claim begins to run when "the plaintiff has achieved a favorable result in the original action."  Id.  Thus, plaintiff argues that his false arrest claim is not barred by the statute of limitations.

To the extent that Mondragón stands for the proposition that a false arrest/imprisonment claim can be based on the Fourteenth Amendment and that such a claim accrues when the plaintiff achieves a favorable result in the criminal case, plaintiff's § 1983 false arrest claim is still time barred.  A Fourteenth Amendment false arrest claim is based on the plaintiff being imprisoned pursuant to legal but wrongful process.  Plaintiff does not allege that he was ever imprisoned pursuant to legal process.  Rather, plaintiff's claims are based on his allegation that he was arrested and prosecuted without probable cause.  In other words, plaintiff alleges that he was arrested and imprisoned without legal process, which is a Fourth Amendment claim.  Such a claim accrues at the time of the arrest, which here was in June 2010.  Plaintiff did not file his false arrest claim within two years of that date and thus plaintiff's § 1983 false arrest claim is time barred.  Amendment as to this claim would be futile as plaintiff apparently realized because he did not include a false arrest/false imprisonment claim in his proposed amended complaint.

In his first claim for relief, plaintiff also asserts a § 1983 claim based on allegations that he was denied a fair trial because of the suggestive interviewing of the alleged victims and the deficient investigation. This appears to be a deliberate-fabrication-of-evidence claim.

> In order to support such a claim, [a plaintiff] must, at a minimum, point to evidence that supports at least one of the following two propositions: (1) Defendants continued their investigation of [plaintiff] despite the fact that they knew or should have known that he was innocent; or (2) Defendants used investigative techniques that were so coercive and abusive that they knew or should have known that those techniques would yield false information.

Devereaux v. Abbey, 263 F.3d 1070, 1076 (9th Cir. 2001). Although defendants raise a general argument that the other § 1983 claims asserted in plaintiff's first claim for relief, except for the malicious prosecution claim, are barred by the statute of limitations, they do not expressly address plaintiff's § 1983 fair trial claim. Such a claim does not accrue until the completion of the trial. Venegas v. Wagner, 704 F.2d 1144, 1146 (9th Cir. 1983). Thus, this claim against Scott and Kessler in their individual capacities is not barred by the statute of limitations because plaintiff's trial concluded on February 27, 2013 and he commenced this action on February 26, 2014. Plaintiff has re-stated this claim in his proposed amended complaint (referring to it as his Devereaux claim in Claim Two of his proposed amended complaint).

-14-

As for plaintiff's malicious prosecution claim against Scott and Kessler in their individual capacities, defendants argue that plaintiff has failed to state a plausible claim. "In order to prevail on a § 1983 claim of malicious prosecution, a plaintiff 'must show that the defendants prosecuted [him] with malice and without probable cause, and that they did so for the purpose of denying [him] equal protection or another specific constitutional right.'" Awabdy v. City of Adelanto, 368 F.3d 1062, 1066 (9th Cir. 2004) (quoting Freeman v. City of Santa Ana, 68 F.3d 1180, 1189 (9th Cir. 1995)).

"[P]robable cause is an absolute defense to malicious prosecution." Lassiter v. City of Bremerton, 556 F.3d 1049, 1054–55 (9th Cir. 2009). "[P]robable cause for a prosecution may be established by obtaining a grand jury indictment." Almendarez v. Imdorf, Case No. CV 13–1995–PHX–RCB (SPL), 2014 WL 880540, at *3 (D. Ariz. March 6, 2014). Plaintiff has alleged that he was indicted by a grand jury. Thus, defendants argue that plaintiff has failed to state a plausible § 1983 malicious prosecution claim.

Although "[t]he grand jury's indictment was prima facie evidence of probable cause that [plaintiff] had committed an offense[,] "[t]his presumption of probable cause can be rebutted if officers improperly exerted pressure on the prosecutor, knowingly provided misinformation, concealed exculpatory evidence, 'or otherwise engaged in wrongful or bad faith conduct that was actively instrumental in causing the initiation of legal proceedings.'" Bryant v. City of Goodyear, Case No. CV–12–00319–PHX–JAT, 2014 WL 2048013, at *3 (D.

-15-

Ariz. May 19, 2014) (quoting <u>Awabdy</u>, 368 F.3d at 1067). Plaintiff has alleged that Scott and Kessler conducted an inadequate investigation which included coaching witnesses and that they participated in issuing the press release which encouraged other "victims" to come forward. These allegations are sufficient to rebut the presumption of probable cause.

Defendants next argue that plaintiff's § 1983 malicious prosecution claim should be dismissed because it is based on Kessler's grand jury testimony and her trial testimony. "[T]he Supreme Court has held that 'a grand jury witness has absolute immunity from any § 1983 claim based on the witness' testimony.'" <u>Almendarez</u>, 2014 WL 880540, at *3 (quoting <u>Rehberg v. Paulk</u>, 132 S. Ct. 1497, 1506 (2012)). "The immunity recognized in <u>Rehberg</u> is broad: 'this rule may not be circumvented by claiming that a grand jury witness conspired to present false testimony or by using evidence of the witness' testimony to support any other § 1983 claim concerning the initiation or maintenance of a prosecution.'" <u>Spooner v. City of Phoenix</u>, Case No. CV–12–02612–PHX–DGC, 2014 WL 584263, at *2 (D. Ariz. Feb. 14, 2014) (quoting <u>Rehberg</u>, 132 S. Ct. at 1506). Thus, defendants argue that Kessler has absolute immunity.

Plaintiff argues that his malicious prosecution claim is not based solely on Kessler's grand jury or trial testimony. Rather, he contends that it is based on allegations that Scott's and Kessler's investigation was inadequate, that they coached witnesses, that they predetermined his guilt, and that they publically solicited false accusations against him.

For this conduct, plaintiff argues that Kessler and Scott are not entitled to absolute immunity. Plaintiff argues that "investigative officers cannot cloak their misconduct during an investigation in absolute immunity merely by presenting the fabricated evidence or testifying about it in a grand jury hearing or trial." Jones v. Cannon, 174 F.3d 1271, 1290 (7th Cir. 1999).

Plaintiff argues that Kessler and Scott are also not entitled to qualified immunity. "Government officials who perform discretionary functions generally are entitled to qualified immunity from liability for civil damages 'insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'" Brown v. Oregon Dep't of Corrections, 751 F.3d 983, 989 (9th Cir. 2014) (quoting Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982)). "The Supreme Court has set forth a two-part analysis for resolving qualified immunity claims, which [the court] may address in any order." Id. "First, [the court] must consider whether the facts '[t]aken in the light most favorable to the party asserting the injury ... show [that] the [defendant's] conduct violated a constitutional right[.]'" Id. (quoting Saucier v. Katz, 533 U.S. 194, 201 (2001)). "Second, [the court] must determine whether the right was clearly established at the time of the alleged violation." Id.

Plaintiff argues that he has pled a violation of a clearly established constitutional right. The right to be free from malicious prosecution by a government official is a clearly

established right.  <u>Awabdy</u>, 368 F.3d at 1066.  And, "[m]alicious prosecution actions are not limited to suits against prosecutors but may be brought, as here, against other persons who have wrongfully caused the charges to be filed."  <u>Id.</u>  Plaintiff also argues that he has pled that Kessler and Scott violated this right because their investigation was inadequate and it led to his being arrested and prosecuted without probable cause.

Defendants argue that they are not contending that Scott and Kessler have qualified immunity, that they are only arguing that absolute immunity applies here.  But the problem with defendants' absolute immunity argument is that plaintiff's § 1983 malicious prosecution claim is not based solely on Kessler's grand jury and trial testimony.  Rather, plaintiff's malicious prosecution claim is based, in large part, on the inadequate investigation that led to his being prosecuted.  Plaintiff's § 1983 malicious prosecution claim against Kessler and Scott survives defendants' motion for judgment on the pleadings.  (This claim is restated in Claim Two of plaintiff's amended complaint).

<u>Second Claim for Relief (§ 1983 failure to train and supervise claim)</u>

Plaintiff's second claim for relief is a § 1983 failure to train and supervise claim asserted against the City and Milstead in his official capacity.  This claim against Milstead is dismissed because "[a]n official capacity suit against a municipal officer is equivalent to a suit against the entity."  <u>Ctr. for Bio–Ethical Reform</u>, 533 F.3d at 799.  Amendment as to

Milstead would be futile as plaintiff seems to realize because he does not assert any claims against Milstead in his official capacity in the proposed amended complaint.

As for plaintiff's claim against the City, "[a] government entity may not be held liable under 42 U.S.C. § 1983, unless a policy, practice, or custom of the entity can be shown to be a moving force behind a violation of constitutional rights."  Dougherty v. City of Covina, 654 F.3d 892, 900 (9th Cir. 2011) (citing Monell v. Dep't of Soc. Servs. of the City of New York, 436 U.S. 658, 694 (1978)).

> In order to establish liability for governmental entities under Monell, a plaintiff must prove "(1) that [the plaintiff] possessed a constitutional right of which [s]he was deprived; (2) that the municipality had a policy; (3) that this policy amounts to deliberate indifference to the plaintiff's constitutional right; and, (4) that the policy is the moving force behind the constitutional violation."

Id. (quoting Plumeau v. Sch. Dist. No. 40 Cnty. of Yamhill, 130 F.3d 432, 438 (9th Cir. 1997)). "Failure to train may amount to a policy of 'deliberate indifference,' if the need to train was obvious and the failure to do so made a violation of constitutional rights likely."  Id. (quoting City of Canton v. Harris, 489 U.S. 378, 390 (1989)).  "Similarly, a failure to supervise that is 'sufficiently inadequate' may amount to 'deliberate indifference.'"  Id. (quoting Davis v. City of Ellensburg, 869 F.2d 1230, 1235 (9th Cir.1 989)).  "Mere negligence in training or supervision, however, does not give rise to a Monell claim."  Id.

-19-

Plaintiff argues that he has adequately pled this claim.  Plaintiff alleges that the City failed to

> adequately train and supervise [its] law enforcement personnel ... on the proper use of police power, proper investigative techniques, proper initiation of criminal charges, proper public communications about potential crimes during ongoing investigations, proper conduct of investigations including avoiding methods likely to produce ... false, misleading and unreliable information and the arrest and prosecution of innocent people.[25]

In their reply brief, defendants argue that plaintiff's failure to train and supervise claim against the City is time barred.  "A § 1983 claim for failure to train or supervise begins to run when the facts that would support a cause of action are or should be apparent."  McCarty v. Gilchrist, 646 F.3d 1281, 1289 (10th Cir. 2011).  Defendants argue that plaintiff would have been, or should have been, aware of this claim more than two years prior to the filing of his complaint in February 2014.

The court cannot tell from plaintiff's complaint when he became aware of the alleged policies and practices of the Mesa Police Department.  Thus, the court cannot determine whether this claim is time barred.  This claim is nonetheless dismissed because it is conclusory.  Plaintiff has not pled sufficient factual support for this claim.  Amendment of this claim would not be futile and plaintiff has attempted to fix the problems with this claim by re-stating it as two separate § 1983 claims in his proposed amended complaint (Claims

---

[25]Complaint [etc.] at 12-13, ¶ 55, attached to  Notice of Removal, Docket No. 1.

Three and Four) and including much more factual support as to what the City's policies and practices were.

<u>Third Claim for Relief (negligence claim)</u>

Plaintiff's third claim for relief is a state-law negligence claim against all defendants. Defendants argue that this claim is barred by the statute of limitations. In Arizona, "[a]ll actions against any public entity or public employee shall be brought within one year after the cause of action accrues and not afterward." A.R.S. § 12-821. Defendants contend that plaintiff's negligence claim is based on an allegation that defendants failed to exercise reasonable care when they arrested him in June 2010 and thus his negligence claim accrued in June 2010. Because plaintiff's complaint was not filed until 2014, defendants argue that plaintiff's negligence claim is time barred.

Plaintiff's negligence claim is based on allegations that defendants breached the duty of care by failing to conduct an adequate investigation.[26] "A cause of action accrues when one party is able to sue the other, or when the plaintiff knows or, through the exercise of reasonable diligence, should know the facts underlying the cause of action." <u>Graven v. Sienicki</u>, Case No. 1 CA–CV 13–0253, 2014 WL 648208, at *2 (Ariz. Ct. App. 2014) (citing <u>Gust, Rosenfeld & Henderson v. Prudential Ins. Co. of Am.</u>, 898 P.2d 964, 966 (Ariz. 1995)). Plaintiff filed his complaint on February 26, 2014. For his negligence claim to be timely, it

---

[26]Complaint [etc.] at 14, ¶ 64, attached to Notice of Removal, Docket No. 1.

would have had to accrue sometime between February 26, 2013 and February 26, 2014. Plaintiff had reason to believe that defendants' investigation was inadequate prior to February 26, 2013.  Plaintiff has alleged that his expert testified at trial that defendants' investigation fell below the standard of care.[27]  Plaintiff had to have retained his expert prior to the start of trial, which was in January 2013.  Thus, plaintiff's negligence claim is time barred.

But even if plaintiff's negligence claim is not time barred, defendants argue that it is barred because plaintiff failed to comply with Arizona's Notice of Claim statute, A.R.S. § 12-821.01.  "When a person asserts claims against a public entity and public employee, the person 'must give notice of the claim to <u>both</u> the employee individually and to his employer.'"  <u>Harris v. Cochise Health Systems</u>, 160 P.3d 223, 230 (Ariz. Ct. App. 2007) (quoting <u>Crum v. Superior Court</u>, 922 P.2d 316, 317 (Ariz. Ct. App. 1996)).  "Compliance with the notice provision of § 12–821.01(A) is a 'mandatory' and 'essential' prerequisite to such an action...."  <u>Id.</u> (quoting <u>Salerno v. Espinoza</u>, 115 P.3d 626, 628 (Ariz. Ct. App. 2005)). A Notice of Claim must be served within 180 days of the accrual of the claim being asserted.  Defendants contend that plaintiff failed to serve a Notice of Claim on any of defendants within 180 days of the accrual of his negligence claim.

---

[27]Complaint [etc.] at 8-9, ¶ 37, attached to Notice of Removal, Docket No. 1.

Plaintiff contends that he filed a Notice of Claim within 180 days of his jury acquittal but neither plaintiff's original complaint nor his proposed amended complaint contain any allegations as to when he filed his Notice of Claim.  Moreover, a Notice of Claim filed within 180 days of his acquittal would be too late in terms of his negligence claim.

Finally, defendants argue that plaintiff's negligence claim is not plausible because under Arizona law, police officers cannot be liable for simple negligence in their role in a criminal investigation and an alleged false arrest.  Landeros v. City of Tucson, 831 P.2d 850, 851 (Ariz. Ct. App. 1992) ("As far as simple negligence is concerned, we believe the public interest mandates a rejection of such a tort"); see also, Wright v. City of Phoenix, Case No. CV–11–00181–PHX–GMS, 2011 WL 4071993, at *3 (D. Ariz. Sept. 13, 2011) (quoting Landeros, 831 P.2d at 851) ("Arizona state courts have established a common-law immunity from mere negligence for police officers 'to assure continued vigorous police work'").

Plaintiff's negligence claim is dismissed.  Plaintiff is not given leave to amend because amendment would be futile as this claim is time barred and it is barred by Landeros.  Plaintiff attempts to address the simple negligence problem in his proposed amended complaint by alleging a gross negligence claim against all defendants based on the alleged inadequate investigation.  However, a gross negligence claim would also be

barred by the one-year statute of limitations that applies to public entities and public officials.

Fourth Claim for Relief (state-law malicious prosecution)

Plaintiff's fourth claim for relief is a state-law malicious prosecution claim against the individual defendants.  Defendants argue that this claim should be dismissed for the same reasons plaintiff's § 1983 malicious prosecution claim is subject to dismissal.

Although plaintiff's § 1983 malicious prosecution claim is not subject to dismissal, plaintiff's state-law malicious prosecution claim is dismissed because plaintiff has not alleged in either his original complaint or his proposed amended complaint that he complied with the Notice of Claim requirements.  But, because it is possible that plaintiff could allege that he has complied with the Notice of Claim requirements, plaintiff is given leave to amend as to this claim.

Fifth Claim for Relief (abuse of process)

Plaintiff's fifth claim for relief is a state-law abuse of process claim against the individual defendants.  Defendants argue that this claim should be dismissed because it is time barred by the one-year statute of limitations that applies to public entities and public officials.  This claim is based on allegations that the investigation by Kessler and Scott was inadequate and on the press release which was issued in June 2010.[28]  As discussed above,

---

[28]Complaint [etc.] at 15-16, ¶¶ 72-73, attached to Notice of Removal, Docket No. 1.

plaintiff had reason to believe that the investigation was inadequate more than one year before he filed his complaint in February 2014.  And, any claim based on the press release would have had to be brought within one year of June 2010.  This claim is time barred. Amendment as to this claim would be futile, which plaintiff seems to have realized because he has not re-stated this claim in his proposed amended complaint.

<u>Sixth Claim for Relief (IIED)</u>

Plaintiff's sixth claim for relief is an intentional infliction of emotional distress claim. This claim is apparently based on all of defendants' conduct, much of which occurred more than one year before plaintiff filed his complaint.  Thus, this claim is time barred. Amendment as to this claim would be futile, which plaintiff seems to have realized as he has not re-stated this claim in his proposed amended complaint.

<u>Punitive Damages</u>

To the extent that plaintiff is seeking punitive damages against the individual defendants in their official capacities, defendants argue that this request should be dismissed.  Punitive damages may not be awarded against public officials sued in their official capacities.  <u>Mitchell v. Dupnik</u>, 75 F.3d 517, 527 (9th Cir. 1996).  Similarly, under Arizona law, "[n]either a public entity nor a public employee acting within the scope of his employment is liable for punitive or exemplary damages."  A.R.S. § 12-820.04.  Plaintiff's

request for punitive damages against the individual defendants in their official capacities is dismissed.

Conclusion

Defendants' motion for judgment on the pleadings[29] is granted in part and denied in part.   All of plaintiff's § 1983 claims in his first claim for relief are dismissed except for his malicious prosecution and denial of fair trial claims against Kessler and Scott in their individual capacities.  Plaintiff is given leave to amend as to the claims against Berry in his individual capacity.  Plaintiff's § 1983 failure to train and supervise claim (second claim) is dismissed, but plaintiff is given leave to amend as to this claim.  Plaintiff's negligence claim (third claim) is dismissed with no leave to amend.  Plaintiff's state-law malicious prosecution claim (fourth claim) is dismissed with leave to amend.  Plaintiff's abuse of process claim (fifth claim) is dismissed with no leave to amend. Plaintiff's IIED claim (sixth claim) is dismissed with no leave to amend.  And, plaintiff's request for punitive damages against the individual defendants in their official capacities is dismissed with no leave to amend.

Plaintiff's motion to amend[30] is granted in part and denied in part.  Plaintiff may file an amended complaint, but  he cannot file the proposed amended complaint.  Amending

---

[29]Docket No. 6.

[30]Docket No. 23.

his complaint to include a gross negligence claim would be futile.  It is also  not entirely clear as to whether plaintiff intended to include a state-law malicious prosecution claim in his proposed amended complaint.  And, plaintiff's proposed amended complaint contains a number of typographical errors, particularly when it comes to dates, that should be fixed. Plaintiff's amended complaint shall be filed on or before February 3, 2015.

DATED at Anchorage, Alaska, this 20th day of January, 2015.

/s/ H. Russel Holland_____
United States District Judge